FILED

JUL 0 9 2002

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SAVE THE MANATEE CLUB, *et al.*    )
                                    )
         Plaintiffs,                )
                                    )
    v.                              )    Civ. No. 00-76 (EGS/JMF)
                                    )
LT. GENERAL JOE N. BALLARD,         )
    *et al.*,                       )
                                    )
         Defendants.                )

---

## MEMORANDUM OPINION

On April 17, 2002 plaintiffs filed an expedited motion to enforce the Settlement Agreement approved by this Court on January 5, 2001. The underlying litigation was brought by Save the Manatee Club ("SMC") and 17 other environmental and animal protection organizations against the United States Fish and Wildlife Service ("FWS") and the United States Army Corps of Engineers pursuant to the Endangered Species Act ("ESA"), the National Environmental Policy Act ("NEPA"), and the Marine Mammal Protection Act ("MMPA"). Plaintiffs alleged that defendants violated these acts by approving thousands of projects in the habitat of the endangered manatee in Florida. After extensive settlement negotiations conducted by United States Magistrate Judge John Facciola, the parties entered into the Settlement Agreement that plaintiffs allege is now being violated.

Upon consideration of plaintiffs' motion to enforce the Settlement Agreement, the opposition and reply thereto, the

argument of counsel, as well as the applicable law, this Court will grant plaintiffs' motion and order that defendants comply with the Settlement Agreement.

## BACKGROUND

### I.  January 5, 2002 Settlement Agreement

The Settlement Agreement binds the federal defendants to take certain actions intended to further protect the endangered manatees that live in the coastal waters of peninsular Florida. *See* Plfs.' Mot., Ex. A.  The Settlement Agreement is divided into the following sections: MMPA Rules (regarding incidental take permits), Interim Measures (to protect manatees pending completion of the incidental take regulations), Designation of Sanctuaries and Refuges, Efforts by Service and Other Agencies (discussing coordination of enforcement efforts), Revision of the Manatee Recovery Plan, Notice Provisions, Dispute Resolution and Miscellaneous.  At issue here is defendants' compliance with the Designation of Sanctuaries and Refuges provisions.

Paragraph 11 of the Settlement Agreement states:

> [T]he Service agrees, by April 2, 2001, to submit to the Federal Register for publication a proposed rule for new manatee refuges and sanctuaries throughout peninsular Florida. ... [T]he Service agrees to submit to the Federal Register for publication, by September 28, 2001, a final rule for new manatee refuges and sanctuaries throughout peninsular Florida.  The parties recognize that, in evaluating the need for refuges and sanctuaries the Service anticipates considering the needs of the manatee at an ecosystem level in order to ensure that adequate protected areas are available throughout peninsular Florida to satisfy the biological

>     requirements of the species, with a view towards the
>     manatee's recovery within the meaning of section 4 of
>     the ESA.

*Id.* at ¶11.

Other relevant provisions to this dispute include paragraph 18, which sets forth the agreed upon procedures for extending any time frames set forth in the Agreement.  That paragraph states that time frames may only be extended "for good cause" and that should the federal defendants determine that good cause exists, they "shall provide notice" to plaintiffs and intervenors' counsel.  *Id.* at ¶18.  If plaintiffs or intervenors dispute the cause, they may invoke the dispute resolution provisions set forth in the Agreement.

One other potentially relevant provision states: "Except as expressly provided herein, nothing in this Agreement shall be construed to limit or modify the Service's or the Corps' discretion under any applicable law."  *Id.* at ¶21.

Finally, the Settlement Agreement explicitly recognizes the existence of a lawsuit against the State of Florida brought by plaintiffs pursuant to state law, and states: "The sanctuaries and refuges established by the Service pursuant to ¶11 of this Agreement ... are not intended to affect in any fashion the pending claims in the litigation in the Northern District of Florida."  *Id.* at ¶13.

## II.  Defendants' Actions

Plaintiffs agreed to several extensions of the Agreement's April 2, 2001 deadline for proposing new refuges and sanctuaries, in light of defendants' stated desire to coordinate their activities with the State of Florida.  On August 10, 2001, defendants published in the Federal Register a proposal for public comment establishing 16 additional manatee protection areas in Florida, including four of the more restrictive sanctuaries and 12 refuges.  See 66 Fed. Reg. 42320 (Aug. 10, 2001).  In explaining the proposed action in the Federal Register notice, the FWS specifically explained that the biological requirements of species protection justified the proposal, and that existing protections were not reducing the threat to the species.[1]  The discussion of the biological and conservation need for these proposed sites in that Federal Register notice was extensive.

In the same Federal Register proposal, the FWS stated that it "strongly believe[s] that the State should have leadership in establishing additional manatee protection areas."  66 Fed. Reg. 42321.  Therefore, the FWS stated that it would proceed to final rule-making after receiving public comment only with respect to

---

[1] It is undisputed that human activity, in particular boating, is a leading cause of manatee death.  According to the FWS's proposal, the last 5 years have been record years for watercraft-caused manatee mortality.  66 Fed. Reg. 42319.

4

two of the refuge areas, in Brevard County, Florida.[2] With respect to the other 14 areas, the FWS announced that it would "defer final rulemaking until December 1, 2002." The Service did not provide notice to plaintiffs of good cause that justified this delay pursuant to ¶18 of the Settlement Agreement.

The public comment period on the August 10, 2001 proposal closed on October 9, 2001. On January 7, 2002, the FWS published a final rule establishing the Barge Canal and Sykes Creek areas in Brevard County, Florida as federal manatee refuges. 67 Fed. Reg. 680 (Jan. 7, 2002). In that January 7, 2002 notice, the FWS again announced that it would not take action to finalize the rule-making with respect to the other 14 proposed refuges and sanctuaries before December 1, 2002 to allow the state to take action. 67 Fed. Reg. 686.

Plaintiffs allege that as of the date of their motion to enforce the Settlement Agreement, April 17, 2002, no action had been taken to post appropriate signage or otherwise enforce the use restrictions required of new refuges in Brevard County.

### III.     Actions by State of Florida

On April 19, 2001, the Florida Fish and Wildlife Conservation Commission entered into a Settlement Agreement with plaintiffs. See Plfs.' Mot., Ex. D. That agreement required the

---

[2] Plaintiffs have submitted evidence that these two areas are contiguous and actually comprise a single area in the County.

5

state to establish sixteen manatee "safe havens" and to review law enforcement efforts and speed zones in eighteen counties throughout the state.  A review by this Court of the 16 areas designated by the FWS in August of 2001 and the 16 safe havens indicates some potential overlap in the affected counties, but significant differences in the counties in which these areas are located.  Neither plaintiffs nor defendants have submitted any evidence as to the overlap or differences between these areas.

On May 29, 2001 the Governor of Florida, Jeb Bush, wrote to the FWS requesting that the FWS withdraw certain draft interim guidelines with respect to incidental take of manatees that were required by the Settlement Agreement in this case.  Plfs.' Mot., Ex. E.  Governor Bush requested that the FWS withdraw those draft interim guidelines until an incidental take regulation, also required by this Settlement Agreement, goes into effect.  *Id.*  Governor Bush objected to the draft guidelines on the grounds that the State of Florida was making efforts to protect manatees with a more comprehensive strategy.  The final line of that letter also referred to the designation of federal refuges and sanctuaries: "I respectfully request that the said guidelines be withdrawn from consideration and that the U.S. Fish and Wildlife Service allow the State of Florida to implement our pending settlement agreement as opposed to additional or expanded federal manatee refuges or sanctuaries."  *Id.* at 2.

## DISCUSSION

### I. Violation of Settlement Agreement

The issue before this Court is relatively straightforward: have defendants complied with their commitment to "submit to the Federal Register for publication, by September 28, 2001, a final rule for new manatee refuges and sanctuaries throughout peninsular Florida," absent any justified extensions of time? Plfs.' Mot., Ex. A at ¶11. Plaintiffs argue that the designation of two contiguous refuges in one county of Florida is insufficient to comply with the Agreement. Furthermore, plaintiffs argue that the defendants' decision to delay rule-making with respect to 14 other proposed refuges and sanctuaries without notice to plaintiffs also violates the Agreement. Defendants argue in response that they have complied with the terms of the Agreement, which required them only to engage in the rule-making process. Defendants argue that plaintiffs disagree with, but can not challenge, the substantive outcome of that process.

It is well-settled that this Court has the authority to enforce a court-ordered settlement agreement. *See, e.g., Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381, 114 S. Ct. 1673 (1994). It is also well-established that a court-ordered settlement agreement is to be interpreted in accordance with

basic principles of contract law. *See, e.g., United States v. IIT Continental Baking Co.*, 420 U.S. 223, 238, 95 S. Ct. 926 (1975). According to those principles, the "scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S. Ct. 1752 (1971). However, in order to discern the meaning of the terms in an agreement, "reliance upon certain aids to construction is proper, as with any other contract," including "the circumstances surrounding the formation of the consent decree." *U.S. v. Western Electric Co.*, 846 F.2d 1422, 1427 (D.C. Cir. 1988); *accord ITT Continental Baking*, 420 U.S. at 238.

The plain language of paragraph 11 is unambiguous. Defendants agreed to issue a final rule by a date certain that designated both "refuges *and* sanctuaries" "throughout peninsular Florida." Plfs.' Mot., Ex. A at ¶11 (emphasis added). Defendants argue unpersuasively that the final rule published on January 7, 2002, establishing the Barge Canal and Sykes Creek areas in Brevard County, Florida as federal manatee refuges was sufficient to meet this requirement. 67 Fed. Reg. 680. Defendants' actions thus far do not comply with paragraph 11 of the Settlement Agreement.

First, it is uncontested that defendants have not issued a final rule that establishes any manatee sanctuaries.

Importantly, refuges and sanctuaries are legally specific and distinct terms. Sanctuaries receive a far greater level of protection than do refuges. The Settlement Agreement did not state that FWS would designate "refuges *or* sanctuaries," but rather required the designation of both "refuges *and* sanctuaries." Plfs.' Mot., Ex. A at ¶11 (emphasis added). Defendants have provided no response to the argument they have violated the Settlement Agreement that by failing to designate any sanctuaries.

However, even with respect to the designation of refuges, defendants have also failed to comply with the plain language of the Agreement. The Agreement requires the designation of sanctuaries and refuges throughout peninsular Florida. Plfs.' Mot., Ex. A at ¶11. The designation of two contiguous refuges in one county of Florida is clearly insufficient to fulfill this agreement. Defendants argue that if this Court were to enforce the plain language of the agreement and require designation of refuges "throughout peninsular Florida" they would be required to designate every waterway in peninsular Florida a protection zone. The Court agrees that it would be an absurd reading of this language to require "throughout" to mean every waterway in peninsular Florida, but the plain language requires no such thing. A reasonable reading of that term, and indeed a reading that would appear to reflect the intent of the parties at the

9

time the agreement was formed, would require at least a general distribution of protected areas around the entire region. The 16 protected areas proposed on August 10, 2001 would satisfy this general distribution requirement.[3]

Even if this Court believed that the language "throughout peninsular Florida" was ambiguous, the circumstances surrounding the formation of the consent decree support this Court's reading of that language. Defendants argue that all that was meant by the parties when they included that term was a geographic limitation on the scope of defendants' discretion. Since plaintiffs sued defendants alleging violations throughout Florida and Georgia, that language focused the scope of the Settlement Agreement on one particular part of Florida. However, defendants' argument is undermined by the fact that nothing in the Agreement supports their understanding of their discretion. Defendants agreed to issue a final rule designating sanctuaries and refuges, not to simply engage in the rule-making process during which they would consider establishing these areas.

Furthermore, the Court must also consider the phrase "throughout peninsular Florida" in relation to other language in the Agreement. Immediately following the sentence in question, the Agreement states "[t]he parties recognize that, in evaluating

---

[3] This Court has no need to venture into the difficult territory of determining exactly how many refuges and sanctuaries would be required to comply with this Agreement. Indeed, the parties themselves saw fit to avoid this question, and did not include a precise number in the Agreement.

10

the need for refuges and sanctuaries the Service anticipates considering the needs of the manatee at an ecosystem level in order to ensure that adequate protected areas are available throughout peninsular Florida to satisfy the biological requirements of the species, with a view towards the manatee's recovery within the meaning of section 4 of the ESA." *Id.* at ¶11. Defendants' own Federal Register publications have explained that manatees face serious harm throughout all the counties of peninsular Florida, not just in the one where FWS designated a refuge. 66 Fed. Reg. 42320. Indeed, the FWS explained in detail why its own scientific analysis justified the proposed designation of 16 refuges and sanctuaries. *Id.* A holding that the designation of protection areas "throughout peninsular Florida" is satisfied by areas in just one county would be inconsistent with the concern for the species reflected in the Settlement Agreement.

Finally, the Court will consider the scope and breadth of plaintiffs' initial challenge to defendants' activities in interpreting the language of the Agreement. Plaintiffs' goal in bringing the lawsuit, and in entering into settlement negotiations, was clearly not to protect manatees in only one county in Florida. The language "refuges and sanctuaries throughout peninsular Florida" will not be read by the Court only as a geographic limitation on defendants' discretion, as urged by

defendants, but rather as a reflection of the commitment by defendants to a large scale, comprehensive effort at protecting manatees throughout this area.

Defendants' remaining arguments are similarly unpersuasive. Defendants argue that plaintiffs have no cause to challenge the substantive outcome of the FWS' decision-making process because the Agreement only requires defendants to engage in the rulemaking process. This argument is at odds with the plain language of the Settlement Agreement, which does require a substantive outcome of that rule-making process: the designation of refuges and sanctuaries throughout peninsular Florida. Defendants do not retain the discretion to determine any substantive outcome of this process; that discretion was substantively limited by the Settlement Agreement.

Related to defendants' argument about discretion is their argument that the only means by which plaintiffs can challenge the substance of the rule-making is a separate lawsuit under the Administrative Procedures Act. Without expressing an opinion on the likely outcome of a challenge to defendants' action under the APA, the availability of relief under the APA is irrelevant to the question of enforcement of the Settlement Agreement. In short, the substantive requirements of the Settlement Agreement can and will be enforced by this Court. Plaintiffs need not resort to filing an APA lawsuit when they can challenge

defendants' activities here.

Finally, in addition to violating the Agreement by failing to designate a sufficient number of refuges and sanctuaries throughout peninsular Florida in the agreed upon time, defendants have arguably also violated the Agreement by delaying the rule-making process with respect to the other 14 proposed areas until December 1, 2002.  Defendants did not notify plaintiffs and intervenors of their request for an extension of time for good cause until December 1, 2002 as required by the Settlement Agreement.  As plaintiffs have pointed out, no justification has been offered for this delay other than Governor Bush's request to allow the state to proceed alone with respect to manatee protection in Florida.  Whatever the political ramifications, such a justification cannot excuse a violation of the Agreement to designate areas throughout Florida by the date established by the Agreement.

## II.  Remedy

Plaintiffs have requested that this Court order defendants to comply with the Agreement within 30 days.  Specifically, plaintiffs would like the Court to order defendants to complete the rule-making that began on August 10, 2001 with respect to the 14 proposed areas that are now "on hold."  Plaintiffs also request an award of reasonable attorneys' fees for the time spent on their efforts to compel defendants to comply.

Recognizing the procedural requirements that defendants must undertake in advance of the issuance of any final rule, this Court will require the parties to file written submissions with respect to their recommended remedies for this violation of the Settlement Agreement. This Court will then hold a hearing to discuss the realistic time period defendants will require to move forward and complete this rule on a expedited basis.

### CONCLUSION

At the end of the day, the question before the Court is whether the designation of two contiguous refuges in one county in Florida satisfies the parties' agreement to designate "refuges and sanctuaries throughout peninsular Florida." For the above reasons, defendants' actions have failed to comply with the Settlement Agreement.

An appropriate Order accompanies this Memorandum Opinion.

7/9/02
DATE

EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

Notice to:

    Eric R. Glitzenstein, Esq.
    Katherine A. Meyer, Esq.
    Meyer & Glitzenstein
    1601 Connecticut Ave., N.W.
    Suite 700
    Washington, D.C. 20009
    FAX: 202-588-5049

    Wayne Hettenbach, Esq.
    U.S. Department of Justice
    Wildlife and Marine Resources Section
    P.O. Box 7369
    Ben Franklin Station
    Washington, D.C. 20044-7369
    FAX: 202-305-0275

    Virginia Albrecht, Esq.
    Andrew Turner, Esq.
    Hunton & Williams
    1900 K Street, NW
    Washington, D.C. 20006-1109
    FAX: 202-778-2201